## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**TIEGAN YORK,**
>    2420 14th St., N.W.
>    Washington, DC  20009,

>        *Plaintiff,*

>    v.

**RESIDENTIAL ONE MANAGEMENT,**
>    8975 Guilford Rd., Suite 100
>    Columbia, MD  21046

>    and

**3910 GEORGIA AVENUE ASSOCIATES LP,**
>    3910 Georgia Ave., N.W.
>    Washington, DC  20011,

>        *Defendants.*

Civil Action No. _____

## COMPLAINT AND JURY DEMAND

Plaintiff Tiegan York ("Plaintiff" or "Ms. York") brings this civil rights action for injunctive relief and damages for interference with her right to equal opportunity in housing stemming from the discriminatory actions of Defendants Residential One Management and 3910 Georgia Avenue Associates LP (collectively, "Defendants").  For approximately two years, Defendants subjected Plaintiff to discrimination, retaliation, and a hostile housing environment based on her gender identity and sexual orientation to a degree that shocks the conscience. Defendants discriminated against Ms. York by, among other things, (a) ignoring her maintenance requests—even for basic necessities such as heat in the winter and air conditioning in the summer—for *years* while fulfilling the requests of other tenants, due to Ms. York's gender

identity and sexual orientation; (b) subjecting Ms. York to a hostile housing environment by calling her the most vulgar and insulting of names due to her gender identity and sexual orientation; and (c) retaliating against her for exercising her basic rights under District of Columbia law on the basis of her gender identity and sexual orientation.  Defendants' conduct, which is detailed below, violated Ms. York's right to fair housing under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3604, 3617 and the District of Columbia Human Rights Act of 1977 ("DCHRA"), D.C. Code §§ 2-1402 *et seq.*

As a result of Defendants' illegal actions, Ms. York endured repeated and prolonged harassment, suffered physical and emotional distress, incurred financial damages, and was ultimately forced to move out of her residence due to the unbearable hostile housing environment created by Defendants.  Plaintiff therefore brings this action to vindicate her rights under the law and obtain redress for Defendants' misconduct.

## THE PARTIES

1.      Plaintiff Tiegan York is a resident of the District of Columbia, residing at 2420 14th Street NW, Washington, DC 20009.  She is a transgender woman.  At the time of the events giving rise to this Complaint, Ms. York resided in the District of Columbia at 3910 Georgia Avenue NW, Apartment 522, Washington, DC 20011.

2.      Upon information and belief, Defendant Residential One Management ("Residential One") is incorporated under the laws of Maryland with its headquarters and principal place of business located at 8975 Guilford Road, Suite 100, Columbia, MD 21046.

3.      Upon information and belief, at all times relevant to this Complaint, Defendant Residential One managed the 3Tree Flats apartment building consisting of approximately 130 apartment units, located at 3910 Georgia Avenue NW, Washington, DC 20011 (the "Property").

2

4.      Upon information and belief, at all times relevant to this Complaint, Defendant 3910 Georgia Avenue Associates LP owned the Property and continues to own the Property to this day.

5.      Upon information and belief, at all times relevant to this Complaint, Defendant 3910 Georgia Avenue Associates LP retained Defendant Residential One to operate and manage the Property.  At all relevant times, Defendant Residential One was acting in its capacity as agent for Defendant 3910 Georgia Avenue Associates LP, and the employees of Defendant Residential One were acting in their capacities as agents for Defendant Residential One as well as agents for Defendant 3910 Georgia Avenue Associates LP.

## JURISDICTION AND VENUE

6.      This action arises under the Fair Housing Act, 42 U.S.C. §§ 3604, 3617, among other claims.  This Court thus has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

7.      The remaining claims arising under the laws of the District of Columbia are related to the FHA claims, involving the same case or controversy under Article III of the U.S. Constitution.  This Court thus has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred within the District of Columbia.

## FACTS

9.      On or about September 17, 2015, Ms. York moved into apartment number 522 in the 3Tree Flats building located at 3910 Georgia Avenue NW, Washington, DC 20011.

10.     As of September 17, 2015, the apartment required significant repairs.  Defects included a broken showerhead that was lying on the floor of the tub, significant stains in the bathtub and on the toilet seat, broken window blinds, and painter's tape left on the walls.

11.     As of September 17, 2015, the apartment also had no functioning heat or air conditioning.  When Ms. York first turned on the heating unit, it produced so much smoke that Ms. York had to call the fire department and was told not to turn it on again until it was repaired, for safety reasons.  Upon learning that the heat and air conditioning were not working, Ms. York immediately submitted a maintenance request with Defendants to repair these important items.

12.     Ms. York immediately began submitting maintenance requests to address the multiple problems with her apartment.

13.     Virtually all of Ms. York's maintenance requests were ignored by the Defendants. Defendants did not repair Ms. York's heating and air conditioning for nearly two years, subjecting her to very cold conditions in her apartment in the winter, and very warm conditions in her apartment in the summer.

14.     During particularly cold periods, Ms. York used a space heater she purchased to provide some heat in her bedroom.  On the coldest days, Ms. York had to sit in her running car to stay warm, or else stay with a friend in Maryland.  Her unit was essentially uninhabitable during those periods because Defendants refused to fix her broken heating unit.

15.     Ms. York submitted multiple work orders to 3Tree Flats' emergency phone line for repairs to her HVAC system between October 2015 and January 2016 and received no response.

16.     Ms. York lived in an apartment with a soiled bathtub and broken window blinds for over a year.

4

17.     It took three months for Defendants to fix the broken showerhead.  During this period, Ms. York was forced to travel to the home of a friend in Maryland or to her mother's home several hours away in Virginia to attend to basic hygienic needs, including showering.

18.     Ms. York paid for a parking space at 3Tree Flats.  Despite this payment, Ms. York was rarely able to park in her assigned space because other cars parked there.  Even though Ms. York notified Defendants' agents that cars were parked in her space, Defendants took no action.  This effectively deprived Ms. York of the benefit of the parking space for which she had paid.

19.     At all relevant times through August 9, 2017, Mr. Wilbert Jefferson was the maintenance engineer at 3Tree Flats, employed by Residential One, and was an agent of the Defendants.

20.     On one occasion, Mr. Jefferson requested that police officers issue a ticket to Ms. York's car while it was parked in her assigned space, which the officers did.

21.     On a virtually daily basis throughout the entire period Ms. York lived at the Property, Mr. Jefferson used derogatory terms to address Ms. York, calling her a "faggot" and "Juwanna Mann," which is an apparent reference to a movie in which a man dresses as a woman.

22.     On one day in March 2016, as Ms. York parked her car near the apartment building, she saw Mr. Jefferson's girlfriend's son, T.J. Carpenter (who lived with Mr. Jefferson in 3Tree Flats) sitting nearby.

23.     Ms. York had had a frightening encounter with Mr. Carpenter earlier that day, in which Mr. Carpenter and his friends called her insulting names based on his perception of her sexuality.  Later that day, Ms. York's car was vandalized.  Upon information and belief, Mr. Carpenter smashed Ms. York's car window.  Ms. York filed a police report, but an investigator suggested that she drop the issue if she was concerned about her safety, so she did.

5

24.     Mr. Carpenter regularly called Ms. York "faggot bitch boy."  Neither Mr. Jefferson nor any other of Defendants' representatives did anything to prevent this ongoing harassing treatment by a resident of the Property.

25.     Mr. Jefferson's harassing conduct towards Ms. York created a hostile housing environment for Ms. York.

26.      Mr. Jefferson encouraged other residents, including Mr. Carpenter, to harass Ms. York, which further created a hostile housing environment for Ms. York.

27.     Saudia Rivers was an assistant manager at 3Tree Flats and Defendants' agent. Ms. Rivers alerted Mr. Carpenter that Ms. York had spoken to management about his harassment of Ms. York.  This inappropriate action made the situation worse for Ms. York, as it notified her harasser that Ms. York had been complaining about him.

28.     As a result of the conversation between Ms. Rivers and Mr. Carpenter, Mr. Carpenter waited in the hallway outside Ms. York's apartment and angrily confronted Ms. York for telling management about her broken car window.  Ms. York was afraid and shocked that Defendants' managers would put her in such a dangerous situation.  She denied everything and walked away, frightened that Mr. Carpenter might kill her.

29.     When she got to her car, she discovered a long key scratch that she believed Mr. Carpenter caused.

30.     The next day, Ms. York told Mr. Jefferson about the frightening incident involving her car and Mr. Carpenter's role in it.  Mr. Jefferson, Defendants' agent and employee, said that he was tired of everyone coming to him about Mr. Carpenter, and that Ms. York would have to speak to Mr. Carpenter's mother.  Ms. York explained to Mr. Jefferson that she was

afraid that Mr. Carpenter might harm her, but Mr. Jefferson took no steps to protect Ms. York or discourage Mr. Carpenter from engaging in further threatening behavior.

31.     For at least a year after this incident, Mr. Carpenter continued to speak to Ms. York by using offensive slurs such as "bitch," "faggot," and "faggot bitch boy," even after Ms. York reported him to Defendants' management and corporate representatives.

32.     In May 2016, Ms. York approached Ms. Rivers to ask why her maintenance requests had gone unanswered for more than half a year.  Ms. Rivers stated that Mr. Jefferson would not respond to Ms. York's maintenance requests because he perceived Ms. York to be gay.  Ms. Rivers did not offer to have the repairs completed by anyone other than Mr. Jefferson, nor did she make any effort to ensure that Residential One completed the repairs.

33.     Mr. Jefferson continued to ignore Ms. York's maintenance requests for the majority of her time at 3Tree Flats through August 9, 2017, when Mr. Jefferson was transferred off the property.  At the same time, Mr. Jefferson performed timely repairs on other tenants' apartments.

34.     No agent or employee of Defendants either made the necessary repairs to Ms. York's apartment or ensured that others made such repairs.

35.     When Ms. York complained to Defendants' employees at 3Tree Flats about the failure to make necessary repairs to her apartment, Ms. York was told "we know how you are and we don't pay you any attention."

36.     In August 2016, a fellow resident blocked Ms. York's entrance to the building elevator.  The resident then stated that he "wanted to go home with" Ms. York and "I've got something big for you."  Ms. York reported this incident to Ms. Rivers, but Defendants took no action.

37.     On October 15, 2016, Ms. York filed a complaint with the D.C. Office of Human Rights ("OHR"), alleging discrimination against her because she had received a housing voucher.

38.     On October 17, 2016, Ms. York drafted a complaint letter and emailed it to Vickei Janes, regional director at Residential One, and Defendants' agent.  The letter detailed many of Ms. York's attempts to get Defendants to render her home habitable as well as Mr. Jefferson's refusal to perform any repairs.  Ms. York's letter also detailed how she feared for her safety from Mr. Jefferson's stepson as a result of the car vandalism incidents.

39.     Ms. Janes responded on October 19, 2016, directing Ms. York to communicate all concerns to management in writing.  She also instructed Ms. York to request work orders through Defendants' office, either by calling the office, sending a written request, or leaving a message with the answering service.  Ms. Janes acknowledged that repairs were required to replace Ms. York's blinds, remove painter's tape, and remove stains in the bathtub.

40.     The bathtub repair was scheduled to be completed on October 21, 2016, but the repairmen did not show up.  They were then scheduled to fix the bathtub on October 26, 2016, but again did not show up.

41.     A few weeks after sending her complaint letter to Ms. Janes, Ms. York asked ShaMarda Hart, property manager at 3Tree Flats and Defendants' agent, about her pending maintenance requests.  Ms. Hart replied that Ms. Janes had instructed her to "stay away from" Ms. York.

42.     Around the same time, Ms. Rivers told Ms. York that Ms. Janes had referred to Ms. York as "trouble," "a joke," and a "clown."

43.     On January 7, 2017, Ms. York contacted Tony Ross, cofounder and President of Defendant Residential One and Defendants' agent.  Ms. York told Mr. Ross that she lacked heating in the apartment since she moved in, and that her notices to Defendants about the heating issue had been ignored.  Mr. Ross forwarded the complaint to Ms. Janes and instructed Ms. York to submit maintenance requests through the property management and, if necessary, through Ms. Janes, even though Ms. Janes had a history of insulting Ms. York and telling others not to take her seriously.

44.     In February 2017, Ms. Rivers informed Ms. York that Ms. Janes had stated that Ms. York was "theatrical" and a "drama queen," referencing Ms. York's gender identity.  Ms. Janes also informed the staff not to pay Ms. York any mind because she was full of drama.

45.     Ana Bolanos, the new manager at the Property and Defendants' agent, told Ms. Rivers not to speak with Ms. York.  Ms. Bolanos referred to Ms. York as "funny boy," a derogatory reference to Ms. York's gender identity.

46.     On February 21, 2017, Ms. York wrote to Mr. Ross and Ms. Janes that she had reported being harassed because of her sexual orientation to Ms. Janes, who consistently made light of it.  In an email to Mr. Ross only, Ms. York stated that although she had spoken to him about her heat not working and submitted a formal maintenance request as instructed by Ms. Janes, the problem had still not been fixed.

47.     In March 2017, Ms. York's car was damaged again while parked in the Property's garage.  Although Ms. York notified Mr. Ross, Ms. Janes, and Ms. Bolanos, Defendants' agents refused to provide her with a copy of the surveillance video necessary to complete her insurance claim.

48.     On March 13, 2017, Ms. York filed a complaint with the District of Columbia Office of Human Rights ("OHR") against 3Tree Flats and Residential One, for discrimination on the basis of her gender identity and sexual orientation.

49.     On May 3, 2017, three teenage boys accosted Ms. York in front of her apartment building, called her "faggot," and shouted that Ms. York is "not a woman."  Defendants' agent Mr. Jefferson and Mr. Carpenter witnessed this, laughed hysterically, and encouraged them. Several days later, Defendants' leasing agent, Brittney Watts, told Ms. York she was concerned for Ms. York's safety at 3Tree Flats and insisted she take her spray can of mace to protect herself.

50.     Also on May 3, 2017, Elizabeth Young, Defendants' interim community manager, sent a letter to all residents of 3Tree Flats informing them that the internal maintenance team would be replacing air filters in all units.  Thereafter, Ms. York's air filter was not replaced, even though she had seen the maintenance person replacing them in other units.  When she asked the front desk agent, Ms. Watts, she was told that all replacements had been completed on June 7, 2017.

51.     Ms. York notified Defendants by June 22, 2017 that she would soon be moving out of the apartment.

52.     In June 2017, Mr. Jefferson put a sticker on Ms. York's car to be towed.

53.     On July 6, 2017, Ms. York wrote to Mr. Ross and Ms. Janes, copying Brittney Holloway from DC Housing, stating that she was filing criminal charges and had already contacted the Housing Authority about the taunting and harassment she received from Defendants and their agents.  She also informed them that it was over 90 degrees in her apartment because of her continued broken HVAC unit.

54.     On July 10, 2017, Defendants received notice of Ms. York's second complaint filed with OHR. The next day, on July 11, 2017, and after nearly two years without functioning heat or air conditioning, Ms. Young finally contacted Ms. York to ask whether they had permission to enter her apartment to service her AC unit. Defendants finally fixed Ms. York's air conditioning unit by July 17, 2017.

55.     Throughout Ms. York's two-year period at 3Tree Flats, Defendants' employees openly called her derogatory slurs. Front desk employees called her "faggot," Ms. Bolanos called her "funny boy," Mr. Jefferson called her "faggot" and "Juwanna Mann," and various other employees also called Ms. York offensive names.

56.     At all relevant times through August 9, 2017—the date of Ms. York's OHR mediation with Residential One arising out of this dispute—Mr. Jefferson continued to be employed by Residential One at 3Tree Flats and lived in an apartment on the premises. On that date, Defendants transferred Mr. Jefferson off the property.

57.     As a result of Defendants' discriminatory treatment, Ms. York has suffered severe physical and emotional distress, which has continued to affect her life in manifestations including disturbed sleeping patterns, anxiety, and suicidal thoughts.

58.     Ms. York was ultimately forced to move out of the property in September 2017 due to her continuing fear for her safety.

59.     Ms. York has incurred economic damages due to the lack of maintenance and its interference with her enjoyment of her residence, as well as financial expenditures on travel for adequate hygiene, maintenance costs undertaken herself, housing search costs, and increased living costs.

## CAUSES OF ACTION

**COUNT I: Discriminatory Terms, Conditions, and Privileges in Housing**
**(Sex Discrimination Under Section 804 of the Fair Housing Act (FHA), 42 U.S.C. § 3604(b))**

60.     Ms. York re-alleges and incorporates by reference paragraphs 1 through 59 of the Complaint herein.

61.     Section 804 of the FHA makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, *sex*, familial status, or national origin."  42 U.S.C. § 3604(b) (emphasis added).  Under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), gender stereotyping is sex discrimination under Title VII.  Drawing on *Price Waterhouse,* conduct against an individual for failing to conform to gender norms constitutes prohibited sex discrimination under the FHA.

62.     Regular offensive gender stereotyping against Ms. York precluded her from being able to maintain a safe and comfortable dwelling that was free from harassment. It also precluded her from receiving necessary, and lawfully required, repairs to her unit.  Upon information and belief, Defendants' agents regularly used Ms. York's gender nonconformity as a reason to deny Ms. York repairs.

63.     Defendants' agents, namely, Mr. Jefferson, intentionally ignored Ms. York's requests to repair her unit while nonetheless providing repairs to other residents whom Mr. Jefferson and the management staff perceived as conforming to heterosexual or cisgender norms.

64.     Defendants and their agents frequently harassed Ms. York for her apparent nonconformity with how Defendants believed someone of Ms. York's perceived gender should act.

65.     Mr. Jefferson, Defendants' employee and agent, repeatedly yelled offensive gender stereotyping slurs at Ms. York throughout Ms. York's two-year residency in the building, referring to Ms. York as a "faggot" and "Juwanna Mann."

66.     Defendants' onsite staff at 3Tree Flats, particularly the front desk staff, regularly mocked Ms. York for not conforming to their understood stereotypes of her gender.

67.     Defendant's employee and agent, Ms. Bolanos, referred to Ms. York as "funny boy," a derogatory reference to Ms. York's gender expression, reflecting Ms. Bolanos' demeaning, stereotyped views about how a "boy" should act.

68.     Defendants' employee and agent, Mr. Jefferson, harassingly encouraged and laughed with a group of boys as they accosted Ms. York in front of 3Tree Flats and shouted that Ms. York is "not a woman."

69.     In violation of section 804 of the FHA, Defendants have unlawfully discriminated against Ms. York in their frequent offensive gender stereotyping and in their refusal to provide necessary maintenance services. This has denied Ms. York safe, comfortable, and harassment-free housing.

70.     As a result of Defendants' discriminatory actions, Ms. York has suffered emotional and physical distress, economic losses, and other attendant harms.

## COUNT II: Hostile Housing Environment
### (Interference, Coercion, or Intimidation under Section 818 of the FHA, 42 U.S.C. § 3617)

71.     Ms. York re-alleges and incorporates by reference paragraphs 1 through 70 of the Complaint herein.

72.     Section 818 of the FHA makes it "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised

or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section. . . 3604." 42 U.S.C. § 3617.

73.     In violation of Section 818 of the FHA, Defendants and their agents created and enabled a hostile housing environment for Ms. York through their regularly expressed condemnation of Ms. York's nonconformity with Defendants' gender stereotypes, and through their refusal to repair fundamental defects in Ms. York's apartment because of this perceived nonconformity.

74.     Defendants and their agents engaged in multiple individual instances of abusive discriminatory conduct that, when taken together, created a severe and pervasive hostile environment that interfered with Ms. York's ability to enjoy harassment-free housing.  This conduct included calling Ms. York "faggot," "Juwanna Mann," "trouble," "a joke," a "clown," "theatrical," a "drama queen," and "funny boy."  This conduct also included discriminatorily refusing to repair Ms. York's apartment despite her frequent and sustained complaints and notifications.  In response to her complaints and notifications, Defendants' agents told Ms. York that "we know how you are and we don't pay you any attention."

75.     Defendants also encouraged residents at 3Tree Flats to engage in abusive and discriminatory conduct that, when taken together, created a severe and pervasive environment of hostility so as to interfere with Ms. York's ability to enjoy harassment-free housing.

76.     As a result of the encouragement and example set forth by Mr. Jefferson and Defendants' other employees and agents, 3Tree Flats residents mimicked Defendants' discriminatory conduct.  Just as Mr. Jefferson called Ms. York "faggot," Mr. Carpenter called Ms. York "bitch," "faggot," and "faggot bitch boy" with impunity.

77.    Due to the encouragement of Defendants and their agents, residents of 3Tree Flats and their acquaintances repeatedly yelled hateful gender-stereotyping terms, such as "bitch boy," at Ms. York upon seeing her in the building.  When individuals confronted Ms. York coming out of the apartment building, calling her "faggot" and following her down the street shouting that she "is not a woman," Mr. Jefferson laughed and encouraged this offensive gender-based stereotyping.

78.    Such repeated verbal harassment with sexual overtones related to Ms. York's gender identity and perceived sexual orientation and her failure to conform to cisgender or heteronormative patterns of behavior interfered in Ms. York's exercise or enjoyment of her housing.

79.    By reason of Defendants' creation of a hostile housing environment, Ms. York has suffered harassment, intimidation, emotional and physical distress, damage to her personal property, and other attendant harms.

## COUNT III: Disparate Treatment Discrimination for Refusal or Restriction of Repairs or Improvements for a Tenant
**(Gender Identity or Expression and Sexual Orientation Discrimination under the District of Columbia Human Rights Act (DCHRA), D.C. Code § 2-1402.21(a)(4))**

80.    Ms. York re-alleges and incorporates by reference paragraphs 1 through 79 of the Complaint herein.

81.    Section 2-1402.21(a)(4) of the DCHRA makes it unlawful "[t]o refuse or restrict facilities, services, repairs or improvements for a tenant or lessee" on the basis of "actual or perceived . . . sexual orientation . . . [or] gender identity or expression."  D.C. Code § 2-1402.21(a)(4).

82.     Upon information and belief, the Defendants willfully and repeatedly failed to make requested repairs to Ms. York's apartment.

83.     Ms. York repeatedly requested Defendants make repairs in her unit, including, but not limited to the non-functional air-conditioning, the non-functional heating system, damaged blinds, a broken showerhead, and a stained bathtub.

84.     Mr. Jefferson, as Defendants' agent and the maintenance engineer responsible for making unit repairs, repeatedly harassed Ms. York at 3Tree Flats throughout Ms. York's two-year residency in the building, referring to Ms. York as "faggot" and "Juwanna Mann."

85.     Defendants' agent, Ms. Rivers, informed Ms. York that "the reason you are not getting your apartment serviced is because you're gay."

86.     Defendants' agent, Ms. Janes, informed the onsite employees at 3Tree Flats not to trust Ms. York or take her complaints seriously because she was a "drama queen."

87.     Other residents, who the management and maintenance staff perceived as being cisgender or heterosexual, received repairs to their apartment units when Ms. York did not.

88.     The refusal to make repairs described herein was accomplished willfully and intentionally on the basis of Ms. York's gender identity or expression, and perceived sexual orientation.

89.     This chronic refusal to make repairs was unlawful because it was based on Ms. York's gender identity or expression, and perceived sexual orientation, in violation of the DCHRA, D.C. Code § 2-1402.21(a).

90.     By reason of Defendants' unlawful refusal to make repairs to Ms. York's apartment in violation of District of Columbia law, Ms. York has suffered severe emotional distress and other attendant harms.

16

**COUNT IV: Discriminatory Statements**
**(Discriminatory Statements Based on Gender Identity or Expression and Sexual**
**Orientation under the DCHRA, D.C. Code § 2-1402.21(a)(5))**

91.     Ms. York re-alleges and incorporates by reference paragraphs 1 through 90 of the

Complaint herein.

92.     Section 2-1402.21(a)(5) of the DCHRA makes it unlawful to "make . . . [a]

statement . . . with respect to a transaction, or proposed transaction, in real property, or financing

relating thereto, which . . . unlawfully indicates or attempts to unlawfully indicate any

preference, limitation, or discrimination based on . . .  sexual orientation, gender identity or

expression . . . ." D.C. Code § 2-1402.21(a)(5).  This discriminatory action is unlawful even if

based on "*perceived* . . . sexual orientation, gender identity or expression." *Id.* § 2-1402.21(a)

(emphasis added).

93.     While Ms. York was a tenant at 3Tree Flats, she periodically transacted with

Defendants by paying timely rent on a monthly basis.

94.     Upon information and belief, for almost two years, Defendants and their agents

regularly made derogatory remarks concerning Ms. York's perceived sexual orientation and

gender identity or expression.  One or more of Defendants' agents called Ms. York "faggot,"

"Juwanna Mann," "trouble," "a joke," a "clown," "theatrical," a "drama queen," and "funny

boy."  Defendants' agents told Ms. York that "we know how you are and we don't pay you any

attention."

95.     The statements described herein were made willingly and intentionally on the

basis of discrimination against Ms. York's perceived sexual orientation and gender identity or

expression.

96.     The derogatory statements were unlawful because the statements indicated a dis-preference for, limitation on, or discrimination against transgender individuals and individuals perceived as gay, such as Ms. York, or, at minimum, evidenced an intention to make a dis-preference, limitation, or discrimination in violation of the DCHRA, D.C. Code § 2-1402.21(a).

97.     By reason of Defendants' unlawful statements in violation of District of Columbia law, Ms. York has suffered harassment, intimidation, emotional distress, and other attendant harms.

<u>**COUNT V: Hostile Housing Environment**</u>
**(Gender Identity or Expression and Sexual Orientation Discrimination under the DCHRA, D.C. Code**
**§ 2-1402.61(a))**

98.     Ms. York re-alleges and incorporates by reference paragraphs 1 through 97 of the Complaint herein.

99.     Section 2-1402.61(a) of the DCHRA makes it unlawful to "interfere with any person in the exercise or enjoyment of. . . or on account of having aided or encouraged any other person in the exercise or enjoyment" of housing rights "granted or protected under this chapter." D.C. Code § 2-1402.61(a).  This includes the right to be free from discrimination based on "actual or perceived . . . sexual orientation . . . [or] gender identity or expression," *id.* § 2-1402.21(a).

100.    In violation of the DCHRA, § 2-1402.61(a), Defendants and their agents created and enabled a hostile housing environment for Ms. York based on their regularly expressed condemnation of her perceived sexual orientation and gender identity or expression, and their refusal to repair fundamental defects in Ms. York's apartment due to her perceived sexual orientation and gender identity or expression.

101.    Defendants and their agents engaged in multiple individual instances of abusive discriminatory conduct that, when taken together created a severe and pervasive environment that interfered with Ms. York's ability to enjoy harassment-free housing.  This conduct included calling Ms. York "faggot," "Juwanna Mann," "trouble," "a joke," a "clown," "theatrical," a "drama queen," and "funny boy."  This conduct also included discriminatorily refusing to repair Ms. York's apartment despite her frequent and sustained complaints and notification of the failure to repair.  Following complaints and notifications, Defendants' agents told Ms. York that "we know how you are and we don't pay you any attention."

102.    Defendants encouraged residents at 3Tree Flats to engage in abusive and discriminatory conduct that, when taken together created a severe and pervasive environment so as to interfere with Ms. York's ability to enjoy harassment-free housing.

103.    As a result of the encouragement and example set forth by Mr. Jefferson and Defendants' other employees and agents, 3Tree Flats residents mimicked Defendants' discriminatory conduct.  Just as Mr. Jefferson called Ms. York "faggot," Mr. Carpenter called Ms. York "bitch," "faggot," and "faggot bitch boy" with impunity.

104.    Due to the encouragement of Defendants and their agents, residents of 3Tree Flats and their acquaintances repeatedly yelled hateful gender-stereotyping terms, such as "bitch boy," at Ms. York upon seeing her in the building.  When individuals confronted Ms. York coming out of the apartment building, calling her "faggot" and following her down the street shouting that she "is not a woman," Mr. Jefferson laughed and encouraged this offensive gender-based stereotyping.

105.     Such repeated verbal harassment with sexual overtones related to Ms. York's gender identity or expression and perceived sexual orientation interfered with Ms. York's exercise or enjoyment of her housing.

106.     By reason of Defendants' creation of a hostile housing environment, Ms. York has suffered harassment, intimidation, emotional and physical distress, damage to her personal property, and other attendant harms.

### COUNT VI: Retaliation
### (Gender Identity or Expression and Sexual Orientation Discrimination under the DCHRA, D.C. Code § 2-1402.61(b))

107.     Ms. York re-alleges and incorporates by reference paragraphs 1 through 106 of the Complaint herein.

108.     Section 2-1402.61(b) of the DCHRA makes it unlawful discrimination to "retaliate against, interfere with, intimidate or discriminate against a person, because that person has opposed any practice made unlawful by this chapter, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing authorized under this chapter," D.C. Code § 2-1402.61(b).

109.     Ms. York complained verbally and sent multiple emails to supervisors at Residential One concerning her harassment from the onsite staff at 3Tree Flats and her ongoing discriminatory treatment with respect to unit repairs.  Defendants retaliated against Ms. York's complaints described herein by telling staff members not to take Ms. York seriously following her complaints.

110.     In October 2016, Ms. York filed her first claim with OHR against Defendants, alleging discrimination against her because she had received a Housing Choice Voucher. Defendants' agents responded soon after by spreading hateful and discriminatory rumors about

Ms. York to the onsite staff at 3Tree Flats, and instructing the staff that Ms. York was not to be trusted.

111.    When her concerns remained unaddressed by Defendants, Ms. York filed another OHR complaint in March 2017, alleging discriminatory treatment on the basis of her gender identity and perceived sexual orientation.  As a result, Defendants took adverse action against Ms. York by failing to address her multiple maintenance requests and her requests to cease harassing comments.  Specifically, after Ms. York's first OHR complaint, Ms. Janes began calling her "trouble," "a joke," a "clown," and instructed other agents and employees not to talk to her, ensuring that she would not have her complaints and grievances addressed.

112.    In violation of the DCHRA, § 2-1402.61(a), Defendants unlawfully retaliated against Ms. York by taking these materially adverse actions against her for engaging in protected activities.

113.    As a result of Defendants' retaliatory actions, Ms. York has suffered emotional and physical distress, financial loss, and other attendant harms.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Tiegan York requests that this Court enter judgment in her favor and against each of the Defendants as follows:

(1)    Declaring the Defendants' actions complained of herein to be in violation of the FHA, 42 U.S.C. §§ 3604, 3617, and the DCHRA, as amended, D.C. Code § 2-1402, *et seq.*;

(2)    Granting such injunctive relief as the Court deems appropriate to discontinue and prevent Defendants' unlawful conduct;

(3)     Awarding appropriate compensatory and punitive damages to Plaintiff and against

Defendants, jointly and severally;

(4)     Awarding reasonable costs and reasonable attorneys' fees in this action; and

(5)     Awarding Ms. York such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all issues in this matter so triable.


Dated:  May 14, 2018                              Respectfully submitted,



                                                  /s/ Adam M. Chud
                                                  Adam M. Chud (D.C. Bar No. 468443)
                                                  **GOODWIN PROCTER LLP**
                                                  901 New York Avenue N.W.
                                                  Washington, DC 20001
                                                  Phone: (202) 346-4000
                                                  Fax: (202) 346-4444
                                                  AChud@goodwinlaw.com

                                                  Hannah E.M. Lieberman (D.C. Bar No. 336776)
                                                  Catherine Cone (D.C. Bar No. 1032267)
                                                  **WASHINGTON LAWYERS' COMMITTEE FOR
                                                  CIVIL RIGHTS AND URBAN AFFAIRS**
                                                  11 Dupont Circle, N.W., Suite 400
                                                  Washington, DC 20036
                                                  Phone: (202) 319-1000
                                                  Fax: (202) 319-1010
                                                  hannah_lieberman@washlaw.org
                                                  catherine_cone@washlaw.org


                                                  *Attorneys for Plaintiff Tiegan York*